**Wonderlyn Lorraine Bell PINCKNEY,**
**Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 06–803C.

United States Court of Federal Claims.

Jan. 14, 2009.

 

 

Wonderlyn Lorraine Bell Pinckney, Georgetown, SC, pro se.

Michael Francis Kiely, with whom were Thomas J. Marshall, Managing Counsel, Civil Practice Section, United States Postal Service, Washington, DC, and Jeffrey S. Bucholtz, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, DC, for defendant. Morgan E. Rehrig, Law Department, United States Postal Service, Washington, DC, of counsel.

*OPINION*

HEWITT, Judge.

I. Background

On November 13, 2008 the court issued an order stating the following:

On Thursday, November 13, 2008, at 10:00 a.m. Eastern Standard Time (EST), the court held a Telephonic Status Conference (TSC) with the parties. At the TSC the court reviewed the exhibit lists with the parties. Further to the TSC, the court will not retain [sic; "retain" should read "receive"] testimony or exhibits at trial to the extent such testimony or exhibits relate to contracts in force prior to the contract at issue in this dispute. The documents affected by this ruling are Joint Exhibit (JX) 1, JX 3, Defendant's Exhibit (DX) 1, DX 2, DX 3, and DX 4. The

testimony of Keith Roy is also affected. Defendant may file a motion for reconsideration of this ruling on or before December 5, 2008.

Order of Nov. 13, 2008. Defendant's Motion for Reconsideration (defendant's Motion for Reconsideration or Def.'s Mot. for Recons.), filed December 5, 2008, is now before the court. Defendant "seeks reconsideration of the Court's order [of November 13, 2008] that precludes defendant from introducing at trial in its case [-]in[-]chief any evidence, either documentary evidence or oral testimony, regarding the past performance of plaintiff on any Postal Service contract prior to the contract that was terminated for default by the Postal Service on August 8, 2005, Highway Contract Route [(HCR)] 29585." Def.'s Mot. for Recons. 1. Defendant states that it "is unaware of any statute, regulation, or controlling case that would have precluded the contracting officer from considering such evidence of plaintiff's poor past performance on previous contracts when he was deciding whether to terminate for default HCR 29585 in August 2005." *Id.* Instead, according to defendant, "there are cases that directly or analogously allow a contracting officer, when contemplating the termination of a contract for default, to consider a contractor's poor past performance on other contracts." *Id.* at 1–2. On December 9, 2008 the court requested that plaintiff file a response to defendant's Motion for Reconsideration to "be mailed on or before Tuesday, December 23, 2008." Order of Dec. 9, 2008. Plaintiff's Response to Defendant's Motion for Reconsideration (plaintiff's Response or Pl.'s Resp.) was received and filed by the Clerk of the Court on December 29, 2008. Plaintiff argues that "there was never an issue of past poor performance mention [sic] that cancelled, or terminated contract renewal for July 01, 2005." Pl.'s Resp. 1.

II. Standard of Review

The standards applicable for reconsideration of non-final decisions are set forth in Rules 54(b) and 59(a) of the Rules of the United States Court of Federal Claims (RCFC). RCFC 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or

the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities." RCFC 54(b). RCFC 59(a) provides that rehearing or reconsideration may be granted as follows: "(A) for any of reason for which a new trial has heretofore been granted in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States." RCFC 59(a)(1).

■ "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court." *Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir. 1990). "The court must consider such motion with 'exceptional care.'" *Henderson County Drainage Dist. No. 3 v. United States*, 55 Fed.Cl. 334, 337 (2003) (quoting *Fru–Con Constr. Corp. v. United States*, 44 Fed.Cl. 298, 300 (1999)). "A motion for reconsideration is not intended, however, to give an 'unhappy litigant an additional chance to sway' the court." *Matthews v. United States (Matthews)*, 73 Fed.Cl. 524, 525 (2006) (quoting *Froudi v. United States*, 22 Cl.Ct. 290, 300 (1991)).

In this case, however, and in distinction from circumstances usually surrounding a motion for reconsideration, the court issued an order precluding the evidence now at issue but inviting defendant to file a motion for reconsideration. *See* Order of Nov. 13, 2008. The court views its decision on the Motion for Reconsideration before it to be within its reasonable discretion and subject to the directive that the RCFC "be construed and administered to secure the just, speedy, and inexpensive determination of every action." RCFC 1.

III. Discussion

Defendant's Motion for Reconsideration now before the court provides the court with much more detail than that provided to the court during the TSC held on November 13, 2008. *Compare* Def.'s Mot. for Recons. *passim* (providing citations to multiple cases), with Transcript of TSC of Nov. 13, 2008 (Tr.) 38:18–39:17 (discussing that a provisional order will be issued precluding certain exhibits and testimony from trial and that the United States will have the opportunity to file a motion for reconsideration by December 5, 2008). With full briefing on defendant's Motion for Reconsideration before the court, the court considers anew defendant's request to offer exhibits and testimony at trial relating to contracts in effect prior to the contract at issue in this dispute.

■ According to defendant, "A contracting officer, in the sound exercise of his discretion whether to terminate, is within his rights to consider such past performance issues, even if they occurred on other contracts." Def.'s Mot. for Recons. 7. Defendant argues that "the Boards of Contract Appeals have held that a contracting officer, when contemplating a termination for default, was within his rights to consider a contractor's poor performance on other contracts." Def.'s Mot. for Recons. 2.

*General Floorcraft, Inc.* is a case from the General Services Administration Board of Contract Appeals (GSBCA) involving two "requirements contracts [the '73 contract and the '74 contract] for the supply of electric, commercial-type floor polishers to [the General Services Administration (GSA)] between December 1, 1988, and November 30, 1990." *General Floorcraft, Inc.*, GSBCA No. 10493, 91–2 BCA (CCH) ¶ 24,023, 1991 WL 90946, 1991 GSBCA Lexis 244 at *1 (May 29, 1991). On October 24, 1989 the '73 contract was terminated for default. *Id.* at *9. The contracting officer also terminated the '74 contract for default that same day. *Id.* The GSBCA found:

GSA could terminate for default each contract at issue, in whole or in part, if General Floorcraft failed to deliver specified floor polishers within designated time limits, or failed to make progress so as to endanger performance of the contract. With regard to the '73 contract, the record is replete with evidence that notwithstanding the contracting officer's extension of

delivery dates and modifications of specifications, appellant never delivered even one compliant polisher. *Id.* at \*13. The contractor focused its appeal on the termination of the '74 contract, arguing the termination "was improper because it was taken after the brushes on just the first two machines provided were found to deviate from the contract specifications." *Id.* at \*15. The GSBCA held that the "contract plainly entitled the agency to terminate for default, in whole as well as in part, for reasons of which late delivery is one." *Id.* In terminating the '74 contract, the contracting officer considered the contractor's performance of the '73 contract. *Id.* at \*16. The GSBCA held that such consideration was reasonable:

> [A]lthough we are dealing here with two separate contracts, the instruments call for very similar items under virtually identical conditions, and appellant's failure to respond to sympathetic actions under the first contract gave no indication that positive results would result from the same strategy on the second. The contracting officer's decision to default the entire '74 contract, after the first two polishers were found deficient, was not only within his rights, but also reasonable and in the best interest of the Government.

*Id.* at \*16–17.

In *American KAL Enters., Inc.,* GSBCA No. 11118, GSBCA No. 11323, GSBCA No. 11327–11329, 92–2 BCA (CCH) ¶ 24,891, 1992 WL 45856, 1992 GSBCA Lexis 61 (Feb. 28, 1992), the appellant contractor "moved the [GSBCA] to restrict the proof offered by respondent [GSA] at hearing and strike … any and all … 'documents which do not relate to the terminated purchase orders that [we]re the subject of the[ ] appeals.'" *Id.* at \*1 (citation omitted). The GSBCA found the evidence relevant, noting that "[t]he Board has previously held that a contractor's performance on a previous contract was one factor a contracting officer could use in determining whether or not to issue a default termination." *Id.* at \*3 (citing *General Floorcraft, Inc.,* GSBCA No. 10493, 91–2 BCA (CCH) ¶ 24,023, 1991 GSBCA Lexis 244). Appellant further argued that the evidence would "unnecessarily expand the scope of discovery and the time for hearing." *Id.* The GSBCA, however, found that because "the Government has proposed to use this evidence only to bolster the reasonableness of the decision to terminate for default, the propriety of those previous rejections is not directly at issue" and denied appellant's motion. *Id.* This court respectfully disagrees with the view that decisions—the "propriety" of which has not been determined—may fairly be used to "bolster the reasonableness" of the termination of a subsequent contract.

Defendant also argues that there exists "[a]nalogous reasoning regarding a contracting officer's consideration of a contractor's poor past performance within the term of the same contract." Def.'s Mot. for Recons. 4 (discussing *Universal Fiberglass Corp. v. United States (Universal Fiberglass),* 537 F.2d 393, 210 Ct.Cl.206 (Ct.Cl.1976)); Def.'s Mot. for Recons. 5 (discussing *Decker & Co. v. West (Decker),* 76 F.3d 1573 (Fed.Cir. 1996)). *Universal Fiberglass* involved a contract for the production and delivery of small mail delivery trucks. *Universal Fiberglass,* 537 F.2d at 394, 210 Ct.Cl. at 209. The performance of the contractor, United Fiberglass Corporation, was flawed throughout the performance of the contract, including the contractor's falling behind on the rate of delivery schedule. *Id.* at 394–95, 210 Ct.Cl. at 209–10. The government amended the contract and formalized a time extension excusing part of the delay. *Id.* at 394–95, 210 Ct.Cl. at 210. Additional delays and adjustments followed. *Id.* at 395, 210 Ct.Cl. at 211 Not only did the contractor's production not keep pace with the revised schedules, but many of the delivered vehicles were deficient. *Id.* The government requested the contractor to submit a revised delivery schedule, but the contractor was unable to do so and the contract was terminated for default. *Id.* at 395–96, 210 Ct.Cl. at 212. The GSA Board of Contract Appeals and the Court of Claims trial judge upheld the default termination.[1]

---

1. The plaintiff in *Universal Fiberglass Corp. v. United States (Universal Fiberglass)* appealed its termination for default to the General Services Administration (GSA) Board of Contract Appeals. *Universal Fiberglass,* 537 F.2d 393, 396, 210 Ct. Cl. 206, 213 (1976). The plaintiff also filed a

*Id.* at 396, 210 Ct.Cl. at 212. A three-judge panel at the Court of Claims held that the contractor's past performance, before the revised schedule was requested, could be taken into account by the contracting officer in deciding whether to terminate the contract after the revised schedule was implemented. *Id.* at 397, 210 Ct.Cl. at 216. The panel found that the contractor's past performance showed "a pattern of nonperformance and delay which should not be ignored. Although not justifications for default themselves, they provide a context for understanding and evaluating plaintiff's continued problems." *Id.* at 397, 210 Ct.Cl. at 215. The court notes that *Universal Fiberglass,* a case concerning a single contract, does not support the view that performance on a prior contract can be relied on as a justification for the termination of a later contract.

*Decker* involved a construction contract for the renovation of an army barracks in Wackernheim, Germany. *Decker,* 76 F.3d at 1575–76. Due to problems arising from the start of the contract, such as the fact that the building was occupied, the contract was modified. *Id.* at 1576. The contract was modified a total of four times. *Id.* When *Decker* had not completed the project by the performance deadline set forth in the fourth modification, the contracting officer terminated the contract for default. *Id.* at 1576–77. The Armed Services Board of Contract Appeals (ASBCA) upheld the default termination. *Id.* at 1578. According to the United States Court of Appeals for the Federal Circuit (Federal Circuit), "[the contractor] is wrong when it asserts that the Board should not have considered [the contractor's] lack of progress before the issuance of [the fourth modification]." *Id.* at 1581. The Federal Circuit held that the ASBCA "was entitled to take [the contractor's] performance history into account notwithstanding the fact that the Government set a new completion date for the project, because past lack of progress 'indicate[s] a pattern of nonperformance and delay which should not be ignored.'" *Id.* (quoting *Universal Fiberglass,* 210 Ct.Cl. at 215, 537 F.2d at 397) (alteration in original).

However, the "lack of progress" involved the very contract under consideration, and not, as here, a prior contract completed without termination.

Plaintiff argues that she "served giving the best of service to the mail patrons" and that she never "tarnish[ed] the image of the United States Postal Service." Pl.'s Resp. 2. Plaintiff also argues that she "never displayed favoritism to any customer, regardless [of] who they were." *Id.* These arguments, however, are not at issue in the present motion. Defendant's Motion for Reconsideration asks the court to reconsider "the Court's order [of November 13, 2008] that precludes defendant from introducing at trial in its case[-]in[ ]chief any evidence, either documentary evidence or oral testimony, regarding the past performance of plaintiff on any Postal Service contract prior to the contract that was terminated for default by the Postal Service on August 8, 2005, [HCR] 29585." Def.'s Mot. for Recons. 1. Plaintiff provides evidence portraying her past performance in a positive light, instead of addressing the question at issue—whether past performance is relevant at all. *See* Pl.'s Resp. *passim.* In contrast, defendant argues that the contracting officer was permitted to consider "evidence of plaintiff's poor past performance on previous contracts when he was deciding whether to terminate for default HCR 29585 in August 2005." Def.'s Mot. for Recons. 1.

Plaintiff's Response lists four cases as "reference" but provides no indication or analysis as to why they are relevant to the court's disposition of defendant's Motion for Reconsideration. *See* Pl.'s Resp. 2. The four cases are *Plante v. Jacobs,* 10 Wis.2d 567, 103 N.W.2d 296 (1960), *Vela v. Kendall,* 905 So.2d 1033 (Fla.Dist.Ct.App.2005), *Maddog Software, Inc. v. Sklader (Maddog Software),* 382 F.Supp.2d 268 (D.N.H.2005), and *Sterling Vision, Inc. v. Rieger (Sterling Vision),* 281 A.D.2d 537, 721 N.Y.S.2d 809 (N.Y.App. Div.2001). *See* Pl.'s Resp. 2. The court has reviewed and considered the cases cited by plaintiff and has concluded that none of them

petition in the Court of Claims on March 6, 1970. *Id.* The Court of Claims stayed its proceedings pending resolution of the appeal in front of the

GSA Board of Contract Appeals. *Id.* On May 28, 1971 the GSA Board of Contract Appeals upheld the termination for default. *Id.*

appears to be relevant to defendant's Motion for Reconsideration. *Plante v. Jacobs* addressed "[s]ubstantial performance as applied to construction of a house." *Plante v. Jacobs,* 103 N.W.2d at 298. *Vela v. Kendall* involved a dispute over a non-compete provision of a contract and whether a trial court could extend an injunction beyond the non-competition period contemplated in the contract. *Vela v. Kendall,* 905 So.2d at 1034–35. *Maddog Software* concerned an action for copyright infringement and an alleged violation of a non-competition agreement. *Maddog Software,* 382 F.Supp.2d at 271. Finally, addressing an alleged breach of a restrictive covenant, the court in *Sterling Vision* denied the plaintiff's motion for a preliminary injunction because the period of the restrictive covenant had expired. *Sterling Vision,* 721 N.Y.S.2d at 809.

## IV. Conclusion

The focus of this lawsuit is whether the plaintiff delivered all deliverable mail on July 2, 2005. Although some of the evidence at issue in this Motion for Reconsideration relates to the delivery of mail, some does not. The court does not regard this evidence as sufficiently probative to warrant the distraction from the core issue in this case of additional witnesses and testimony. Furthermore, evidence of plaintiff's poor past performance on previous contracts does not appear to be of a type that make the allegation of breach here—the failure to deliver mail—more or less credible. Finally, the legal issues in the cases cited by defendant are not clearly analogous—still less dispositive—to the legal issues in defendant's Motion for Reconsideration. Moreover, none of the cases arises in the context of a mail carrier contract; they all pertain to supply and delivery contracts. Defendant's Motion for Reconsideration is therefore DENIED. The court will not receive testimony or exhibits at trial to the extent such testimony or exhibits relate to contracts in force prior to the contract at issue in this dispute.

IT IS SO ORDERED.